From the New York Herald.

## COURT OF OYER AND TERMINER—November 20, 1851.

Present—Mr. Justice EDMONDS, and two aldermen.   Justices
EDWARDS, and KING were also on the bench.

The District Attorney moved the sentence of the court on
Otto Grunzig, convicted of the murder of his wife.

Mr. Joachimssen moved for time to prepare a case or a bill
of exceptions.   The Revised Statutes, he said, gave two modes
of proceeding in cases of this kind.   One by a writ of error,
the other by a bill of exceptions, with a certificate of the
judge that there is probable cause for review.

Mr. Joachimssen said, that on the part of the prisoner, he intended to adopt the latter course.   He had received information, at four o'clock yesterday, which would be important evidence on a new trial.   On the one hand, Mr. Ogden Hoffman
had testified, on the trial, that he had never known that the
deceased woman was sick while in his employment.   On consulting with his family, however, he discovered that he was in
error, for it appears that she had been ill, and counsel was referred to the physician who attended her.   The other testimony
to which he referred would lead to the inference that the woman
died by suicide.

The court understood the application to be for a stay, on the
ground of newly discovered evidence.

Mr. Joachimssen was proceeding with his application, when
the court said that no doubt the power exists, and it was not
necessary to cite authorities.   There is not the slightest doubt,
on the mind of the court, as to the propriety of the verdict.
Counsel could have his motion for a new trial, and if there was
any error shown, the stay of execution could be granted after
sentence, as well as before.   It was not, therefore, necessary to

stop the proceedings of this court, for if any judge of the Supreme Court thinks a stay of proceedings should be granted, there will be no difficulty in obtaining it.

Otto Grunzig was then asked, through Mr. Joachimssen, as interpreter, what he had to say why sentence of death should not be passed on him.

Grunzig replied, "If I am to die I declare my entire innocence. I am innocent. Mrs. Zender is a false witness. She is now in court, and has remained all the time in court, only to have the pleasure of seeing me condemned. I repeat, if I am bound to die, I declare again I am innocent."

The Judge then proceeded to pass sentence upon the prisoner, which was interpreted to him.

### SENTENCE ON OTTO GRUNZIG.

Otto Grunzig: The crime of which you have been convicted is murder in its most appalling and dangerous form — the murder, namely, by a husband of his wife, through the secret administration of poison. No precautions she could adopt could protect her, and the confidence, which necessarily exists in the conjugal relation, but increased the facility for committing the crime. It is painful for us to dwell upon the details of your offense, or to be severe in recalling them to your mind at this trying moment. But it is incumbent upon us, in some measure, to do so, in order to awaken in you, a due sense of your condition, and that all may feel the propriety of the conclusion, at which the jury arrived, and the justice of the sentence, which the court is to pronounce. You deserted your wife in a foreign land, and yourself sought a refuge on our soil, which is open to the inhabitants of all the world. You had scarcely come among us before you seduced a reputable female; and regardless of all your marital duties, you lived in open adultery with her. You became a father by her, and you promised to wed her. Such was your condition, when your wife followed and found you, and during the residue of her life she was destined to witness your bestowing upon the object of your unholy love, those marks of endearment which belonged only to her. She was compelled to leave you, and seek in service to earn her livelihood, and was doomed to see you live as man and

wife with another, and to receive at your hands, only such contributions toward her support, as that other was willing you should mete out to her. She is represented, on all hands, to have been in every respect worthy your affection and confidence, and she displayed toward you throughout, even when she felt she was dying at your hands, that devotion, forbearance, and forgiveness, that a fond woman is alone capable of. Yet she was in your way, and you slew her; she annoyed you, and you took her life — not suddenly, but by a slow and deadly poison, which enabled you several days, day by day, to witness her mortal agonies, until death came to her relief. There is much reason to believe that you administered poison to her when she left you to go to service, but she fortunately recovered, and was in vigorous health when she returned to you, insisting that you should discharge the duty of a husband to her. She met, on the very threshold of the home you had provided for her, your paramour, who threatened personal violence to her, and she had scarcely entered that home before she was taken ill. From that illness she never recovered. During the day-time, and while you were away from her, leaving her to the care of strangers, she grew better; but every morning, after you had spent the night with her, she was worse, and so she died. [Grunzig here said, "It's all a lie."] All her symptoms were those of one poisoned. The appearance of her body after death indicated poison. Traces of arsenic were found on her body — faint, indeed, there, but clearly defined in the matter she had vomited, and in the sugar which you were seen frequently to administer to her. During her fatal illness you neglected her, and consorted still with your paramour, and you pretended yourself to be ill in like manner as she was. I say pretended, because the jury have found that your illness was but a pretence, fabricated to meet the contingency which you so surely anticipated. That your wife died by poison, and that you administered it to her, were established beyond doubt; and the jury have believed, from your anxiety to get possession of her property — the product of her own industry — and from your desire to get rid of her presence, that you willfully administered it, intending her death. Hence the awful condition in which you are placed, yourself about to die on the gallows, and your helpless offspring left to

struggle, without a father's aid, through a world which contains, alas! but too much of the misdirection which has caused your fall. The ruin which you have thus brought upon yourself, and all connected with you, is a fearful admonition of the future, and impels us to the attempt to awaken you to a due sense of your fallen and melancholy condition. Use well the brief time which is yet left you upon earth, for the day of your leaving it is near at hand, and will approach with a rapid pace. In compassion to you, and in the hope that the time may be profitably spent, we accord to you all the law will allow, and sentence you to be hung by the neck until you be dead, on Friday, the 23d day of January next; and may Heaven have mercy on you.

At the conclusion of the sentence the prisoner said: "If I die I die innocent, and I give my thanks to the court for sentencing me as an innocent man."

The death warrant was read and handed to the sheriff. This death warrant was signed by the presiding judge, and aldermen Miller and Dodge, who constituted the court when the sentence was delivered. The prisoners were then removed.

After the sentence was pronounced, the governor submitted to the judges of the Court of Appeals, then holding a stated term at the Capitol, the report of the case made to him by the judges of the Oyer and Terminer, under the statute, and called attention particularly to the following extract from it.

"With a view of giving in evidence the declarations of the deceased, as well before as after the visits of the second physician, the female attendant on the deceased was examined and testified as follows:

How many days was Mrs. G. sick, all together?

Twelve.

Did you visit her every day from her first sickness until her death?

Yes, sir.

How often each day?

I would only quit her to get my meals.

At any time during those visits did she express her fears of dying?

She said she expected to die, because she thought she was poisoned.

When did she first express to you this opinion as to death?

I think the third day after her first sickness; she was very sick but had her senses; she was very bad.

After this did she at any time express any hopes of getting well?

She never told me she expected to live.

When was this?

She was taken sick on Wednesday, and on Saturday she first told me.

Did her condition improve at all?

From bad it went to worse.

Did any doctor attend her, and what did he say?

When Dr. LeGrand came (the second physician) on his first visit, he said he thought he could cure her. The next day she was better; the day after she was worse; the next day I found her in a passion. The doctor, after deceased had given herself up, gave her hopes. She said she expected to die at eight o'clock, and at half past twelve the doctor came. From nine to eleven that day her mind wandered. The doctor never told her she was going to die.

Upon this testimony the district attorney offered in evidence the declarations of the deceased subsequent to the third day of her illness, as well before as after the visits of the second physician, and cited *Rex* v. *Morely* (1 Moody's Crown Cases, 98).

The court allowed the evidence to be given, and exception was taken.

The judges of the Court of Appeals made the following reply to the governor:

ALBANY, January 21, 1852.

To His Excellency, WASHINGTON HUNT—

SIR: Your letter of yesterday, with the minutes of trial and other papers, in the case of Otto Grunzig, has been received and considered. After a careful examination of the minutes of the trial we are unable to say that the evidence objected to was improperly admitted, or that the prisoner was improperly con-

victed by reason of any error committed by the judge or the jury.

On the contrary, although we think the declarations of the deceased, to which exception was taken, were entitled to no great weight with the jury, we are of the opinion that the judge would have erred in excluding them from their consideration.

We have the honor to be, with great respect, your obedient servants.

> CHARLES H. RUGGLES,
> A. GARDINER,
> F. G. JEWETT,
> ALEXANDER S. JOHNSON
> J. W. EDMONDS,
> M. WATSON,
> P. GRIDLEY.